UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
WESTCHESTER FIRE INSURANCE COMPANY,

                Plaintiff,                 **REPORT & RECOMMENDATION**

    v.                                                 **1:21-CV-802 (DG) (LKE)**

31 OPERATING LLC, 31 GROUP LLC, LASSO OIL
& GAS LLC a/k/a LASSO OIL & GAS, J. DOE(S) 1-
10 (FICTITIOUS NAMES REPRESENTING
UNKNOWN INDIVIDUALS), and XYZ CORP(S) 1-10
(FICTITIOUS NAMES REPRESENTING UNKNOWN
CORPORATIONS),

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**LARA K. ESHKENAZI**, United States Magistrate Judge:

       Before the Court is the motion of Plaintiff Westchester Fire Insurance Company ("Plaintiff" or "Westchester") for default judgment against Defendants, 31 Operating LLC, 31 Group LLC, and Lasso Oil & Gas LLC a/k/a Lasso Oil & Gas (collectively, "Defendants"). For the reasons set forth below, the Court respectfully recommends granting the motion with the exception of Plaintiff's request for attorneys' fees and costs, which the Court respectfully recommends denying without prejudice to renew.

**I.     BACKGROUND**

       This action arises from Defendants 31 Operating LLC ("31 Operating"), 31 Group LLC ("31 Group") and Lasso Oil & Gas LLC a/k/a Lasso Oil & Gas ("Lasso," and collectively, "Defendants" or "Indemnitors") alleged breach of an indemnification agreement. (Amended Complaint "Am. Compl.", ECF No. 35 ¶ 2.) On or about March 30, 2017, Defendants executed a General Agreement of Indemnity in favor of Westchester Fire Insurance Company

("Westchester") as surety. (Am. Compl. ¶ 9.) Westchester issued license and permit surety bonds (the "Bonds") on behalf of 31 Operating and Lasso's business operations. (Am. Compl. ¶¶ 14-15.) To induce Westchester to issue the Bonds, the Indemnitors executed a General Agreement of Indemnity in favor of Westchester (the "Indemnity Agreement"). (Am. Compl. ¶ 9.) According to the Indemnity Agreement, the Indemnitors are jointly and severally obligated to:

> pay or cause to be paid to the SURETY both the agreed premium and, upon written request by the SURETY at any time, collateral security for its suretyship until the INDEMNITORS shall furnish to the SURETY competent written evidence, satisfactory to the SURETY, of the termination of any past, present and future liability under any Bond.

(Declaration of Douglas J. Wills ("Wills Decl."), ECF No. 68-3 ¶ 7; Am Compl. ¶ 11.) Furthermore, the Indemnity Agreement provides that the Indemnitors are jointly and severally obligated to:

> indemnify and save harmless the SUETY from and against any and all liability, claim, demand, loss, damages, expense, cost, attorney's fees and expenses…, which SURETY shall at any time incur by reason of its execution of any Bond…

(Wills Decl. ¶ 8; Am. Compl. ¶ 12; Will Decl. Ex. B ¶ 10 ["[T]he SURETY … shall be entitled to … a final decree, order, or judgment granting SURETY specific performance of the terms of [paragraphs 1 and 2 of the Indemnity Agreement.]"]).

In November 2020, Westchester had not received any evidence of the termination of liability under the Bonds and, therefore, consistent with the Indemnity Agreement, Westchester requested 31 Operating and 31 Group ("Defaulting Indemnitors") furnish collateral in the amount of the then-active Bonds, $1,241,250.00. (Am. Compl. ¶ 17.) Despite repeated written demands and communications, the Defaulting Indemnitors failed to provide the collateral. (Am. Compl. ¶ 22.) Subsequently, Westchester received claims under the North Dakota Bonds resulting in

payment by Westchester of $800,000 to the State of North Dakota on behalf of Lasso Oil & Gas LLC on February 4, 2021, in exchange for a release of claims. (Wills Decl. ¶ 16.) This payment reduced the collateral owed to $441,250.00. (Wills Decl. ¶ 18.) Westchester further alleges that the Indemnitors failed to pay $35,598.40 worth of premiums due to Westchester in connection with the Bonds. (Am. Compl. ¶ 20; Wills Decl. ¶ 12.) Lastly, Westchester claims that the Indemnitors have failed to indemnify or reimburse Westchester for the costs and expenses, including legal fees, that Westchester incurred in connection with this matter. (Wills Decl. ¶ 19.)

On February 12, 2021, Westchester initiated this action against Defendants. (Complaint, ECF No. 1.) Westchester subsequently filed its Amended Complaint against Defendants on July 27, 2021. (Am Compl., ECF No. 35.) On September 13, 2021, Defendants appeared via counsel and filed their Answer to the Amended Complaint. (Answer, ECF No. 40.) After two years of litigation, counsel for Defendants filed a Motion to Withdraw as Attorney for Defendants on September 14, 2023. (Movaseghi Decl. ¶18.)

On November 14, 2023, after holding a hearing, the Court entered an order granting the Motion to Withdraw as Counsel and stayed the case until December 15, 2023, to allow Defendants time to retain counsel. (11/14/2023 Text Order.) The Court further ordered "[i]f Defendants have not retained counsel by 12/15/2023, Defendants must file a letter by that date updating the Court as to their efforts to retain counsel." (*Id*.) The Court entered another order on January 10, 2024, noting Defendants' failure to comply with the November 14, 2023 Order, extended the stay, and ordered Defendants to "file a letter by [January 31, 2024] updating the Court as to their efforts to retain counsel." (11/14/2023 Docket Entry.) After Defendants failed to comply with the November 14, 2023 Order, the Court directed Plaintiff to file a motion to strike Defendants' Answer to the

3

Amended Complaint by March 15, 2024. Accordingly, Plaintiff moved to strike the Answer on March 11, 2024. (Motion to Strike, ECF No. 63.)

On August 19, 2024, the Court granted Plaintiff's Motion to Strike Defendants' Answer to the Amended Complaint and directed Plaintiff to submit its request for a Certificate of Default by September 2, 2024. (8/19/2024 Text Order.) Westchester submitted its request on September 2, 2024. (*See* ECF No. 65.) The Honorable Diane Gujarati referred Plaintiff's motion for default judgment to the undersigned for a Report and Recommendation on December 10, 2024. (12/10/2024 Referral Text Order.) For the reasons set forth below, the Court recommends granting Plaintiff's motion for default judgment against Defendants.

## II.     DISCUSSION

### A.     Jurisdiction

"The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states[.]" 28 U.S.C. § 1332(a)(1). Here, Westchester is a corporation "organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business in Philadelphia, Pennsylvania." (Am. Compl. ¶ 4.) Defendants are all limited liability corporations whose sole member, Ken Goggins, is domiciled in Texas. *Barnes v. Fort Hamilton Fam. Homes*, No. 21-CV-1044 (BMC), 2021 WL 861801, at *1 (E.D.N.Y. March 8, 2021) ("For diversity purposes, LLCs have the imputed citizenship of each of their members."); (Am. Compl. ¶¶ 5-7.). In addition, Westchester seeks over $1,000,000 in damages. Accordingly, the Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because this is an action between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. (Amended Comp. ¶ 1.)

4

This Court has personal jurisdiction over the Defendants pursuant to the Indemnity Agreement, which provides that all "[i]ndemnitors agree that all actions or proceedings arising directly or indirectly from this Agreement shall be litigated only in courts having status within the State of New York, and consents to the personal jurisdiction and venue of any local, state or Federal Court located therein." (Am. Compl. ¶ 3.) In light of Defendants' explicit consent, the Court can exercise personal jurisdiction over Defendants. *Mallory v. Norfolk S. Ry.*, 600 U.S. 122, 138 (2023).

Moreover, "[for] a federal court to exercise personal jurisdiction over a defendant, the plaintiff's service of process upon the defendant must have been procedurally proper." *Windward Bora LLC v. Valencia*, No. 19-CV-4147 (NGG) (RER), 2020 WL 6470293, at *2 (E.D.N.Y. Oct. 16, 2020), *adopted by* 2020 WL 6450286 (E.D.N.Y. Nov. 3, 2020). Federal Rule of Civil Procedure 4(h)(1)(A) provides that a corporate defendant must be served "in the manner prescribed by Rule 4(e)(1) for serving an individual[.]" Fed. R. Civ. P. 4(h)(1)(A). Under subsection (B), the summons and complaint may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4. Rule 4(e)(1) states that an individual may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]" Fed. R. Civ. P. 4(e)(1).

The New York Business Corporation Law ("NYBCL") mandates that "[t]he secretary of state shall be the agent of every domestic corporation and every authorized foreign corporation upon whom process against the corporation may be served." N.Y. Bus. Corp. L. § 304(a). Indeed,

5

"[n]o domestic or foreign corporation may be formed or authorized to do business in this state under this chapter unless in its certificate of incorporation or application for authority it designates the secretary of state as such agent." N.Y. Bus. Corp. L. § 304(b). Lastly, NYBCL section 306 provides that:

> Service of process on the secretary as agent of a domestic … corporation shall be made by personally delivering to and leaving with the secretary of state or a deputy, or with any person authorized by the secretary of state to receive such service, at the office of the department of state in the city of Albany, duplicate copies of such process together with the statutory fee…. Service of process on such corporation shall be complete when the secretary of state is so served.

N.Y. Bus. Corp. L. § 306(b)(1).

Here, Defendants were properly served with an amended summons and the Complaint through the New York Secretary of State on July 27, 2021. (Summons Returned Executed as to Defendants, ECF No. 36.) Therefore, the Court has jurisdiction over Defendants.

### B. Default Judgment Standard

Under Rule 55 of the Federal Rules of Civil Procedure, there are two steps to entering a default judgment. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95-96 (2d Cir. 1993). First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case. Fed R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."). This first step is nondiscretionary. *See United States v. Conolly*, 694 F. App'x 10, 12 (2d Cir. 2017). Second, after the Clerk of the Court enters a defendant's default, the court may enter a default judgment. *See* Fed R. Civ. P. 55(b).

6

Whether or not a default judgment is issued is within the discretion of the court. When evaluating a plaintiff's application for a default judgment, "a court is required to accept all [ ] factual allegations as true and draw all reasonable inferences in [plaintiff's] favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Labarbera v. ASTC Labs., Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotations and citations omitted); *see TAGC Mgmt., LLC v. Lehman, Lee & Xu Ltd.*, 536 F. App'x 45, 46 (2d Cir. 2013) ("[P]rior to entering default judgment, a district court is required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law.") (internal quotations and citations omitted).

"Default judgments are generally disfavored and are reserved for rare occasions." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129 (2d Cir. 2011) (quoting *Enron Oil Corp.*, 10 F.3d at 96) (internal quotation marks omitted). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] ... delay and clog its calendar," it has held that a district court must balance that interest with its responsibility to "afford litigants a reasonable chance to be heard." *Enron Oil Corp.*, 10 F.3d at 95-96. Thus, considering the "oft-stated preference for resolving disputes on the merits," doubts should be resolved in favor of the defaulting party. *See id.* Accordingly, a plaintiff is not entitled to a default judgment as a matter of right simply because defendants are in default. *See Erwin DeMarino Trucking Co. v. Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

Once the Clerk of the Court enters a certificate of default, a defendant is deemed to have admitted the well-pled allegations in the complaint pertaining to liability. *See Greyhound*

7

*Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Montcalm Publ'g. Corp. v. Ryan*, 807 F. Supp. 975, 977 (S.D.N.Y. 1992) (citations omitted). A fact is not considered well-pled, however, "if it is inconsistent with [the] other allegations of the complaint or with facts of which the court can take judicial notice or is contrary to uncontroverted material in the file of the case." *Hop Hing Produces Inc. v. Lin Zhang Trading Co., Inc.*, No. 11-CV-3259 (NGG) (RLM), 2013 WL 3990761, at *3 (E.D.N.Y. Aug. 5, 2013) (citations and internal quotation marks omitted). Ultimately, whether to grant a motion for default judgment is "left to the [court's] sound discretion." *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999) (quoting *Enron Oil Corp.*, 10 F.3d at 95); *Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. D & A Bus Co.*, 270 F. Supp. 3d 593, 606 (E.D.N.Y. 2017).

"In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default." *Double Green Produce, Inc. v. Forum Supermarket Inc.*, No. 18-CV-2660 (MKB) (SJB), 2019 WL 1387538, at *2 (E.D.N.Y. Jan. 29, 2019) (citing *Enron Oil Corp.*, 10 F.3d at 96; *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 170-71 (2d Cir. 2001)). "These factors are 1) whether the defendant's default was willful; 2) whether the defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Double Green Produce*, 2019 WL 1387538, at *2 (quoting *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044 (LTS) (GWG), 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003)) (internal quotation marks omitted).

As to the first factor, "a defendant's nonappearance and failure to respond sufficiently demonstrates willfulness." *Luna v. Gon Way Constr., Inc.*, No. 16-CV-1411 (ARR) (VMS), 2017 WL 835321, at *4 (E.D.N.Y. Feb. 14, 2017), *report and recommendation adopted*, 2017 WL

8

835174 (E.D.N.Y. Mar. 2, 2017) (collecting cases). Here, although Defendants initially filed an Answer to the Amended Complaint, the Answer was stricken by the Court following Defendants' failure to retain new counsel and engage in this litigation. (8/19/2024 Text Order.) Accordingly, Defendants' willful non-engagement and failure to participate sufficiently demonstrates willfulness. *See Integrity Elecs., Inc. v. Garden State Distribs.*, No. 09-CV-2367 (ILG) (CLP), 2012 WL 1041349, at *1-4 (E.D.N.Y. Mar. 28, 2012).

Turning to the second factor, Defendants' failure to appear sufficiently in this action has left the Court unable to assess whether they have a meritorious defense. "Where a defendant fails to answer the complaint, courts are unable to make a determination whether the defendant has a meritorious defense to the plaintiff's allegations[.]" *See Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 143 (E.D.N.Y. 2013). Although the Defendants initially appeared, this appearance was subsequently struck as Defendants failed to further participate in the matter. Therefore, this factor weighs in favor of granting a default judgment against Defendants.

Finally, with respect to the third factor, Plaintiff will be prejudiced if the motion for default judgment is denied because "it would leave its coverage obligations unresolved." *Harleysville Ins. Co. v. Certified Testing Lab'ys Inc.*, 681 F. Supp. 3d 155, 164 (S.D.N.Y. 2023). Accordingly, the Court recommends finding that Defendants failure to sufficiently appear in this matter, which resulted in their answer to the Amended Complaint being struck, constitutes an admission of the factual allegations therein.

C. **Liability**

Plaintiff argues that it is entitled to relief because Defendants breached the Indemnity Agreement by failing to provide Plaintiff with collateral security in relation to the Bonds and indemnify Plaintiffs from losses arising from those Bonds. (Pl. Memo. of Law at 8-13.) The Court agrees. Pursuant to the unambiguous language of the Indemnity Agreement, Defendants are obliged to "pay… the SURETY both the agreed premium and, upon written request by the SURETY at any time, collateral security for its suretyship until the INDEMNITORS [provide] the SURETY competent written evidence … of the termination of any past, present and future liability under any Bond." (Wills Decl. at ¶ 5; Ex. B at ¶¶ 1, 12.) The Indemnitors did not provide evidence of the termination of the Bonds to Westchester. (Wills Decl. at ¶ 14.) Subsequently, Westchester made a written request to the Indemnitors that they provide collateral security in the amount of $1,241,250.00, which the Indemnitors failed to do despite their contractual obligation to post the collateral. (Wills Decl. at ¶ 9.) Moreover, the Indemnitors failed to pay Westchester the premiums due under the Bonds. (Wills Decl. at ¶ 12.) Therefore, the Amended Complaint plausibly alleges that the Indemnitors breached their obligations under the Indemnity Agreement.[1]

The Court may grant a surety's claim for specific performance of collateral provisions if the surety meets its burden under New York Law. *United States Fidelity & Guaranty Co. v. J. United Electrical Contracting Corp.*, 62 F. Supp. 2d 915, 921–22 (E.D.N.Y. 1999) (upholding a magistrate judge's recommendation of finding sureties met their burden of showing entitlement to specific performance of a collateral security clause). Under New York law, a plaintiff is entitled

---

[1] Plaintiff seeks to hold Defendants liable under three theories of liability: (1) contractual indemnification; (2) breach of the Indemnity Agreement; and (3) common law indemnification. A court may dismiss a claim as duplicative if "'relying on the same alleged acts, [the claim] simply seek[s] the same damages or other relief already claimed in a companion [ ] cause of action.'" *Popal v. Slovis*, 12-CV-3916 (LGS), 2015 WL 10687614, at *6 (S.D.N.Y. April 28, 2015) (quoting *Hall v. EarthLink Network, Inc.*, 396 F.3d 500, 508 (2d Cir. 2005)). Here, Plaintiff's contractual indemnification and common law indemnification claim stem from the same breach of the Indemnity Agreement. (*See* Pl. Memo. of Law at 8-13.) Accordingly, these claims should be dismissed as duplicative.

to specific performance of contractual obligations "if (1) there is a valid contract; (2) plaintiff has substantially performed under the contract and is willing and able to perform its remaining obligations; (3) defendant is able to perform its obligations; and (4) plaintiff has no adequate remedy at law." *Id.* at 921 (citing *La Mirada Products Co., Inc. v. Wassal PLC*, 823 F. Supp. 138, 140 (S.D.N.Y. 1990) (citations omitted)).

Plaintiff has met its burden of showing its entitlement to specific performance of the collateral security clause. The Indemnification Agreement is a valid existing contract between the parties and courts in the Second Circuit have "routinely upheld the validity of collateral security clauses and enforced their terms." *United States Fid. & Guar. Co.*, 62 F. Supp. 2d at 922 (citing *American Motorists Ins. Co. v. United Furnace Co.*, 876 F.2d 293, 302 (2d Cir. 1989)); *Am. Motorists Ins. Co. v. Pennsylvania Beads Corp.*, 983 F. Supp. 437, 440 (S.D.N.Y. 1997).

Second, Plaintiff has substantially performed on its obligation under the agreement. Plaintiff received claims under the North Dakota Bonds, and in connection with those claims, tendered a payment of $800,000.00 in exchange for a release of claims executed on behalf of the obligee, the State of North Dakota. (*See* Wills Decl. ¶¶ 15-16). Accordingly, the second element is met.

Third, based upon the well-pleaded Amended Complaint and evidence provided, the Court has no reason to believe that Defendants are not able to perform their obligations under the Indemnity Agreement. Indeed, given the scope of their drilling dealings in Texas, North Dakota, and Colorado, it is likely that Defendants will have the capital to fulfill their indemnification obligations. (*See* Amended Comp. ¶ 17.)

Lastly, Plaintiff has shown it has no adequate remedy at law. Defendants have refused to ensure the termination of the liability of the Bonds or provide the contractually required collateral.

11

Similar to the circumstances in *Am. Motorists Ins. Co. v. United Furnace Co.*, Plaintiff's obligations under the bonds are continuing until Defendants provide evidence of the termination, leading to further losses to the sureties. 876 F.2d at 300 (stating "where liability had not yet been determined but claims were expected, the surety had no legal remedy under that provision for an indemnification award, but it did have an equitable remedy for specific performance of the collateral security provision.").

In sum, the Amended Complaint sets forth allegations establishing "a pattern of [non-cooperation] for which no reasonable excuse for non-compliance has been proffered." *Violet Realty, Inc. v. Affiliated FM Ins. Co.*, No. 1:16-CV-00757 (JLS) (MJR), 2020 WL 13239984, at *10 (W.D.N.Y. Sept. 29, 2020) (internal quotations and citations omitted). Although "a defendant's default does no more than concede the complaint's factual allegations" the default judgment submissions provided by Plaintiff are more than sufficient "to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Said v. SBS Elecs., Inc.*, No. 08-CV-3067 (RJD) (JO), 2010 WL 1265186, at *2 (E.D.N.Y. Feb. 24, 2010) (granting default judgment); *Schader v. Manticof*, 18-CV-01786 (LG) (RM), 2019 WL 13221251, at *1 (E.D.N.Y. Feb. 15, 2019) (holding "the undisputed allegations in the Complaint and the default judgment submissions" established defendants' liability); *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 82 (E.D.N.Y. 2020) (holding "that the plaintiff's allegations are sufficient to establish liability[.]"). Accordingly, the Court respectfully recommends entering a judgment in favor of Plaintiff.

### D. **Damages**

Federal Rule of Civil Procedure 55(b)(2) provides courts discretion to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary

evidence. *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991). "The court may determine damages without an in-person hearing based on the plaintiff's affidavits so long as it can ensure a basis for the damages specified in the default judgment." *Zabrodin v. Silk 222, Inc.*, 702 F. Supp. 3d 102, 113 (E.D.N.Y. 2023) (internal citation omitted). The moving party is "entitled to all reasonable inferences from the evidence it offers." *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). Under New York law, a plaintiff establishing a defendant's breach of contract is entitled to expectation damages. *Emposimato v. CICF Acquisition Corp.*, 89 A.D. 3d 418, 421 (1st Dep't 2011). Expectation damages place a "plaintiff in the same economic position he would have occupied had the breaching party performed the contract." *Id.* (citing *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186 (2d Cir. 2003)).

Here, the Declarations of Douglas J. Wills and Aram B. Movaseghi, along with the attached exhibits, are sufficient to establish Plaintiff's damages. Plaintiff asserts that it is entitled to a total of $1,276,848.40 in contractual damages. (Wills Decl.¶¶ 21(a)-(c).) In support of this amount, Plaintiff has submitted the declaration of Douglas J. Wills, the authorized representative for Westchester Fire Insurance Company for this surety matter. The Wills declaration includes documentary evidence, such as Plaintiff's Collateral Demand (Exhibit C to Wills Decl., ECF No. 68-3), letters sent by North Dakota's Oil and Gas Division to Plaintiff seeking a penal sum of $800,000 (Exhibit D to Wills Decl., ECF No. 68-3), and Plaintiff's letter to the State of North Dakota concerning the payment and release of the $800,000 penal sum. (Exhibit E to Wills Decl., ECF Nos. 68-3.) Under the Indemnity Agreement, Defendants are obligated to pay Plaintiff the agreed premium, $35,598.40, and, upon written request by Plaintiff, the collateral security for its suretyship, $441,250.00. (Indemnity Agreement, ECF 68-5 ¶¶ 1, 12; Wills Decl. ¶¶ 21(a),(c).) The Wills Declaration declares under penalty of perjury that Defendants failed to abide by their

13

contractual obligations. This evidence is sufficient to establish that Plaintiff is owed $1,276,848.40 as damages for Defendants' breach of the Indemnity Agreement.

### E. Prejudgment Interest

Plaintiff alleges that it is entitled to prejudgment interest "under applicable New York law." (Wills Decl., ECF No. 68-3 ¶ 21(f).) "Under New York law, in a breach of contract action, 'prejudgment interest must be calculated on a simple interest basis at the statutory rate of nine percent' per year, with certain exceptions that are not relevant here." *Jamil v. Solar Power Inc.*, 230 F. Supp. 3d 271, 277 (S.D.N.Y.) (citing CPLR §§ 5001 and 5004). Pursuant to New York law, interest shall be computed from the earliest date that the cause of action existed. *See id.* Here, that date is November 24, 2020, when Defendants were required but failed to pay the collateral security in the amount of $1,241,250.00. (Wills Decl. ¶ 13.) Accordingly, the Court recommends granting Plaintiff's request for prejudgment interest.

### F. Attorneys' Fees and Costs

Lastly, Plaintiff claims that it is entitled to $133,503.00 in costs and expenses, including legal fees. (Wills Decl., ECF No. 68-3 ¶ 20.) Plaintiff's failure to provide any invoices or documentary evidence supporting its request for attorneys' fees and costs precludes granting Plaintiff's request at this time. *RJ Kitchen Assocs. Inc. v. Skalski*, No. 16-CV-1436 (LDH) (AKT), 2018 WL 5456672, at *10 (E.D.N.Y. Aug. 2, 2018) (citing *New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1147 (2d Cir. 1983)) ("Plaintiff's counsel must provide the Court, as part of the motion for entry of default judgment, with contemporaneous time records and the background/experience of the attorneys who worked on this matter, as well as any underlying documentation, such as invoices, in support of Plaintiff's request for costs.") Therefore,

14

the Court recommends denying without prejudice to renew Plaintiff's request for attorneys' fees and costs.

IV. **Conclusion**

Based on the foregoing, this Court respectfully recommends that the Court enter a judgment in favor of Plaintiff declaring that Defendants must fulfill their role as Indemnifiers and pay (1) $441,250.00, as collateral security in favor of Plaintiff; (2) $800,000.00, as reimbursement of the losses that Plaintiff incurred in connection with its payment to the State of North Dakota in connection with the North Dakota Bonds; (3) $35,598.40, for unpaid premiums in relation to the Bonds. The Court further recommends denying without prejudice to renew Plaintiff's request for attorneys' fees and costs.

A copy of this Report and Recommendation is being served on Plaintiff via ECF. The Clerk of Court is respectfully directed to mail a copy of this Report and Recommendation to Defendants, 31 Operating LLC at the following address forthwith: 3021 Ridge Rd., Ste. 156, Rockwall, Texas 75032; 31 Group LLC at the following address forthwith: 3021 Ridge Rd., Ste. 156, Rockwall, Texas 75032; and Lasso Oil & Gas at the following address forthwith: 4350 CR 2310, Sulphur Springs, Texas 75482. Plaintiff is also directed to mail a copy of this Report and Recommendation to Defendants and to file proof of service of mailing by August 1, 2025.

Within 14 days of service, any party may serve and file specific written objections to this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Any requests for an extension of time to file objections shall be directed to Judge Diane Gujarati. If a party fails to

object timely to this Report and Recommendation, it waives any right to further judicial review of this decision. *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

      **SO ORDERED.**

Brooklyn, New York
July 29, 2025

                                            /s/ Lara K. Eshkenazi
                                            LARA K. ESHKENAZI
                                            United States Magistrate Judge